Bill (a slave) v. The State.

## BILL (A SLAVE) *vs.* THE STATE.

[INDICTMENT AGAINST SLAVE FOR MURDER OF ANOTHER SLAVE.]

1. *Right to copy of venire.*—When a prisoner, indicted for a capital offense, is in actual confinement, he is entitled to a list of the jurors summoned for his trial, at least two days before the day appointed for his trial; but when he is not in actual confinement, and has counsel, whose names are so entered on the docket, the right to such list does not arise, in favor of either the prisoner or his counsel, except upon application by the latter.—Code, § 3576.

2. *Objections to venire overruled.*—If a defendant in a capital case, not being in actual confinement, and having counsel entered on the docket, proceed to trial without objecting to the panel of jurors summoned, he cannot have the entire panel set aside, on account of the misnomer of one of the jurors, who was summoned but failed to attend; nor on account of the omission to insert in the panel a juror's christian name in full, when the initial letter of the name is correctly stated.

FROM the Circuit Court of Coffee.

Tried before the Hon. E. W. PETTUS.

THE prisoner, who was a slave, was indicted for the murder of another slave, and was convicted. He reserved several exceptions, during the trial, to the rulings of the court in empaneling the jury; and these rulings, which will be readily understood from the opinion, are now relied on to reverse the judgment.

PUGH & BULLOCK, for the prisoner.—1. The *venire* served

on the prisoner contained the name of W. D. Kelly, but no such man was summoned; while the name of Wm. J. Kelly, who was actually summoned, did not appear on the *venire* at all. The two names are not the same. If William J. Kelly had been indicted or sued by the name of W. D. Kelly, he could have pleaded the misnomer successfully.—7 Porter, 443; 4 McCord, 487; 1 Pick. 388; Archbold's C. P. 78.

2. The objection was not waived by proceeding to trial without first objecting to the *venire*, for the defect was not then known; the fact was not developed until the name was drawn. If one name on the *venire* may be a "a man of straw," why may not ten? twenty? all? If the court may substitute one name for another, why not exercise the same power as to the entire panel? A *venire* containing fictitious names, instead of affording the necessary information to the prisoner, is only calculated to mislead him. It is a vital right, which neither the court nor its ministerial officers can prejudice or impair. Parsons v. The State, 22 Ala. 50.

M. A. BALDWIN, Attorney-General, *contra*.—1. The record shows that the prisoner was not in actual custody. He was, therefore, not entitled to a list of the jurors summoned unless he made application for it.—Code, § 3576. The mistake in the name of Kelly was corrected as soon as discovered, and the fact that the correct name was not in the box makes no difference.—McAllister v. The State, 17 Ala. 434.

2. If the mistake was available in any way, the prisoner should have moved for a *venire de novo*.—Parsons v. The State, 22 Ala. 50.

3. The case is entirely unlike that of Parsons. There, the court actively interfered, and discharged a juror who had been summoned; here, the sheriff, a ministerial officer, made a mistake in transcribing the list, but the right man was summoned and called.

RICE, C. J.—When a person, indicted for a capital offense, is in actual confinement, he is entitled to a list of the jurors summoned for his trial, at least two days before the day appointed for the trial; but, if he "is not in actual custody, and have counsel, whose names are so entered on the docket,"

the right to such list does not arise, either in favor of the defendant or his counsel, except, *"on application"* by the latter. Code, § 3576.

For the trial of such defendant, the court must make an order, directing the sheriff to summon not less than fifty, nor more than one hundred persons, including those summoned on the regular juries for the week, or term, if such term does not exceed one week.—Code, § 3578.

Every person *summoned as a juror*, by order of court, for the trial of such defendant, *failing to attend*, or refusing to serve, must be fined not less than fifty dollars, which may be reduced by the court, if the circumstances justify it.—Code, § 3579.

On the trial of such defendant, the names of the jurors summoned for his trial, as well as the names of the regular jurors in attendance, must be written on slips of paper, folded or rolled up, placed in a box or some substitute therefor, and shaken together; and such officer as may be designated by the court must, in its presence, draw out such slips, one by one, until the jury is completed. If all such slips are drawn, and the jury is not made up, the court must direct the sheriff to summon at least twice the number of jurors required to complete the jury, whose names are also to be written on slips of paper, deposited and drawn as above; and so on, until the jury is completed.—Code, § 3580.

If the panel is exhausted by challenges, *or the persons summoned as jurors fail to appear*, neither the defendant nor his counsel is entitled to a list of the persons summoned to supply their places.—Code, § 3577.

The bill of exceptions in the present case shows, that the defendant was not in actual custody, and that he had counsel whose names had been regularly entered as such; and no application for a list of the jurors summoned for his trial appears to have been made, either by him or his counsel. The bill of exceptions also shows, that on the first day of the term a day was set for the trial of this cause, and that on the fifth day of the term the cause was called for trial; that the prisoner and his counsel were present in court, and "made no objections to the *venire*, or panel of *jurors summoned for the trial of this cause*, until four of the jurors had

been accepted by the State and by the prisoner, and duly sworn. The sheriff then drew from the hat, *which contained the names of the persons summoned as jurors*, the name of W. D. Kelly. The prisoner then called the sheriff, who testified, that there was no such man in the county as W. D. Kelly; that he had summoned William J. Kelly, and placed his name on a memorandum with other names of persons summoned as jurors; and that his deputy, who transcribed the names from said memorandum, and returned the list to the clerk, had made a mistake, and returned the name of W. D. Kelly, instead of William J. Kelly. *William J. Kelly was then called, and failed to appear.* Upon these facts, and because the name was in the hat W. D. Kelly, instead of William J. Kelly, the prisoner *objected to proceeding to trial;* but his objection was overruled, and he excepted. The prisoner, for the same reason, *objected to being tried by the panel of jurors thus returned and summoned;* and his objection was overruled, and he excepted. The sheriff then drew from the hat the name of J. Adams, when the prisoner, because the christian name of said Adams was not returned in full, but only by the initial letter J, *objected to proceeding with the trial;* but his objection was overruled, and he excepted. The drawing then proceeded, and the twelve jurors were sworn; the State having challenged two jurors, and the prisoner having only challenged eleven."

The defendant must stand or fall upon the objections as made by him in the court below. If each of his objections assumes for him more than the law allows to him, each of them might properly, for that reason alone, be overruled; for it is well settled, that there is no error in merely overruling an objection, which is not sustainable to the entire extent to which it goes. We shall, therefore, confine ourselves to an examination of the objections as made in the court below.

As the defendant was not in actual custody, and had counsel whose names had been regularly entered as such, and as no application for a list of the jurors summoned for his trial appears to have been made, he had no right to such list; nor does it appear that any list had ever been served on, or furnished to him or his counsel. Yet he went to trial, and

"made no objections to the *venire*, or panel of jurors summoned for the trial of this cause, until four of the jurors had been accepted" and sworn. He then begins with objections, which do not proceed on the ground that he had been deceived or misled by any list of jurors with which he or his counsel had been furnished; but he states his first two objections on the erroneous proposition, that *the mere misnomer* in the panel of one juryman intended to be returned, and who was actually summoned and failed to attend, armed him with the right to have the entire panel set aside, and to refuse to be tried by any jury which could be selected from it. That proposition is not countenanced by the Code, nor by any law which ever was of force in this State.—Hill v. Yates, 12 East's Rep. 230, and the case reported in the note to that case; McCarty v. The State, 26 Mississippi Rep. 299, and authorities therein cited; Boles v. The State, 24 *ib.* 445; Dyson v. The State, 26 *ib.* 362; The People v. Ransom, 7 Wend. R. 417; Inhab. of Amherst v. Inhab. of Hadley, 1 Pick. 38; The State v. Seaborn, 4 Dev. Rep. 305.

The proposition on which his third objection rests, is equally indefensible. It is this: that the mere failure to return and insert in the panel "the christian name" *in full*, of a juror actually summoned for his trial, although the initial letter of the christian name is correctly set forth, clothes him with the right to stop the trial, and to have the entire panel set aside and excluded.

If any argument can be necessary to show that each of these objections claimed for the defendant more than the law allowed him, it will be found in the authorities above cited.

We do not decide, that if a list of the jurors had been served on the defendant before the trial, he would not have occupied a more favorable position, as to the matters embraced by his aforesaid objections. Nor do we deem it proper to decide what objections or motions the defendant was entitled to make upon the facts hereinabove stated. We simply decide, that the objections made by him were too broad; that they claimed too much for him; and that, therefore, there was no error in overruling them.

The objections of the defendant in this case cannot derive any support from the decision made by this court in Parsons

v. The State, 22 Ala. R. 50. In that case, the trial had been set for Wednesday, the 7th day of November, 1852. On the Saturday preceding, the sheriff had summoned one hundred jurors for the trial, in pursuance of an order of the court. *A list of these jurors had been served on the prisoner, as the law directed.* On the day of trial, after the State and the prisoner had announced themselves ready, and after the names of *the jurors summoned* had been deposited in a hat, the drawing commenced, and a portion of the jurors tried and sworn, the names of two persons, *whose names were on the list, and who had been summoned,* were called, and did not appear. They had been discharged, on the preceding Monday, *by the presiding judge, without any sufficient legal excuse; and neither the prisoner nor his counsel knew of the discharge until the names were drawn.* The prisoner, by his counsel, objected to *the action of the court in discharging said jurors from their attendance;* but the court below overruled his objection, and the trial proceeded. This court decided, that the court below erred in thus discharging the two jurors, and in overruling the objection of the prisoner to such discharge. Of the correctness of that decision, there cannot be a doubt. The unauthorized discharge of the two jurors *by the court below,* had deprived the prisoner of a plain legal right—the right to have those two jurors present at the trial, and to have *an opportunity* to select them as jurors to try the cause.

We recognize, to the fullest extent, the principle asserted in that case, that the defendant in a capital case is entitled to demand a compliance with the requisites of the statute, as a matter of right; and that *any action of the court,* which impairs or diminishes that right, is, when duly objected to and presented upon the record, a fatal error. But neither that decision, nor that principle, can justly be applied to the present case, for here, the defendant had no right to a list of the jurors; none had been served on him, or his counsel; no juror *summoned* for his trial was excused, or prevented *by the act of the court,* from attending at the trial; no legal right has been impaired or diminished *by the action of the court* upon the objections made by him. The only pretense for a ground on which to rest his objections, is, *the mere mistake, or informality* of *the ministerial officer,* pointed out in the bill of

exceptions, not accompanied by any fraud or collusion, nor working any deprivation of any right of the prisoner. Such a mistake, or imformality of such an officer, cannot confer on the prisoner the right asserted by him in his objections as made. See authorities cited *supra.*

We have examined all the objections made and exceptions taken by the prisoner. We deem it unnecessary to give any special notice to any others than those above commented on. We are entirely satisfied there is no error in the record, and the judgment of the court below is affirmed.