The prisoner was charged with burglariously entering the house of the prosecutrix, Amanda Ellis, in one count, with intent to steal (80) the "goods and chattels," and in a second count, a "pocket book," of the property of the said Amanda Ellis. To both of these counts prisoner pleaded "not guilty."
The prosecutrix stated that she lived with her daughter in a house with two rooms below with a passway between them, and one room above, to which stairs ran up from the passage. In the upper room was a sash window, fastened with a cotton string and opening upon a porch, the roof of which was nearly on a level with the window. She and her daughter went to bed in the west room, when about 10 o'clock she was awakened by some one running his hand over her *Page 75 
face and throwing off her bed clothes. She screamed and called her daughter, and ran out of the room into the east room, in which was a fire place, and where she and daughter had undressed, placing their clothes on a chair. She went to the door on the north side of the house, opened it, got a fat piece of pine and commenced kindling a fire. Whilst so doing some one went to the door on the south side of the house from the passage and tried to get out; failing in this the person went to the north door, the one she had opened. She did not see him or know who he was. The clothes she had left on the chair were scattered on the floor; that in the pocket of her outside dress she had a pocket book, blue on the outside and red within, containing two five dollar bills, one two dollar bill, and one one dollar bill, fifty cents fractional currency and two twenty-five cent bills. This pocket book fitted tight in her pocket. She went to the house of a neighbor, some three hundred yards from her house, and upon her return she missed the book and money. This witness further stated that she saw a rail leaning up against the roof of the porch, and that the upper window was opened.
Emma Ellis testified that she was awakened by the screams of her mother and started to the room where she had left her clothes. In the passage some one caught her by the shoulders and held her until her mother kindled a light; that he then ran to the south door and tried to open it; failing, he walked across the room to the door her mother had opened and stood there four or five minutes with (81) his hands in his pockets. She stated that she saw him distinctly, knew it was a negro, and that the prisoner was the person; that she knew him before and was certain that it was him.
The Solicitor here rested the case for the State. For the prisoner it was insisted that the State should be required to disclose the whole of the evidence in support of the indictment, and not be permitted to call any other witness except in reply to the testimony to be introduced for the prisoner. His Honor declined to interfere, when the prisoner introduced two witnesses, who swore that on the night of the burglary the prisoner went to bed between 8 and 9 o'clock up stairs over a room in which they slept; that he left his shoes by the fire; that they went to sleep about 9 o'clock and that about 2 o'clock two of the brothers of the prosecutrix called for John; that he was then up stairs where he went to bed and that his shoes were by the fire where he left them when he retired. That there was no way for the prisoner to have gone out of the house, except out of the window of his room, without coming down into the room where they were sleeping; that the door of the house was hard to open and made a noise whenever it was opened, *Page 76 
and that they did not think that he could have got out without their knowing it. These witnesses were proven to be of good character.
The prisoner then offered to prove that about 9 o'clock one Miles Hayes called at the house of a person living about one and a half miles from the prosecutrix and proposed to work for two days for a quart of liquor; that he then went to another house, one-half mile from the prosecutrix, and asked if the house he had just passed was not the house of a widow woman, and what sort of a woman she was; at the same time he enquired the way to the house of two women of ill-fame, and that when he left he went in the direction of the prosecutrix. The court refused to let in the declarations of the said Miles, but said the prisoner might prove his acts.
(82) The prisoner then proposed to prove that between 11 and 12 o'clock the same night, the said Miles Haynes called at the house of one James Wyatt, and wanted him to get some liquor for him, and offered him fifty cents to pay for it. The Court again refused to let in the declarations of Miles Haynes. The prisoner then proved that Wyatt lived about two miles from the prosecutrix, on the way from there to the house where Miles Haynes lived; that on the next day, he, Miles, was seen with a "blackish" pocketbook on the outside, and red inside, and that he had a five dollar bill, a two dollar bill and fifty cents in fractional currency; and prisoner's counsel then offered to prove that in answer to the enquiry, where he got so much money, he answered, he said, his old Mistress had given him fifteen dollars to buy clothes for himself and children. This evidence was rejected by the Court. It was then proved by the prisoner, that this Miles Haynes, on the next day, went to the county of Davidson, and there bought at one store, goods to the amount of $6.95, and at another, he had paid out a one dollar bill; that in paying the bill of $6.95, he paid out a five dollar bill, and that one of the articles bought was a pair of boots, and that when he put them on he threw away his old shoes, which were much worn and run down on the outside; and further, that in a few days after, Miles Haynes left the county. The character of the prisoner was proven to be good, and that of the said Miles to be bad.
The State then proved that the next morning after the burglary, the two witnesses testifying, were at the house of the prosecutrix, and that they found two tracks near her house, which they traced to within one hundred yards of the house where the prisoner lived; that the shoes of the prisoner fitted one of them, and that the other track was a "clean," small track, nine and a half inches long, as if made by a new shoe. There was no proof that the prisoner had any money or pocket book, and there was no proof that the prosecutrix missed any goods or chattels. *Page 77 
The prisoner's counsel asked his Honor to charge the jury that if they were satisfied that the prisoner entered the house with (83) any other intent, than the intent charged, then they should acquit; and that there was no evidence that the prisoner entered with the intent to steal the goods and chattels of the prosecutrix, or her pocket book.
His Honor charged the jury that if the prisoner entered the house of the prosecutrix with any other intent than the intent charged, they should acquit; that there was evidence that he entered with the intent charged: That the evidence was, that the pocket book was in the pocket of the prosecutrix when she went to bed, and was missing shortly after her return from the house of a neighbor; that her outside dress was on the floor, and her underclothes on the chair, where she left them.
The jury returned a verdict of guilty. Rule for a new trial granted and discharged. Judgment and appeal by prisoner.
The prisoner has assigned three reasons why he is entitled to a venirede novo.
1. After examining two witnesses, the State rested the case. The prisoner insisted that the State should be compelled to disclose its whole case, and should not be allowed to call other witnesses, except in reply to the prisoner's testimony. The Court declined to interfere, in that there was no error. It is the province of the prosecuting officer to determine who shall be examined as witnesses on the part of the State, and when he will rest his case, and the rules of practice are the same in this respect, in civil and criminal actions. After making out a case the State may reserve other testimony for the reply to the prisoner's case, if it should be necessary. This testimony held in reserve, may be merely corroborative of the witnesses first introduced by the State, or it may consist of new facts not before deposed to, but in answer to the case made by the prisoner. But this is a matter of practice, and the objection made by the prisoner was one (84) addressed to the discretion of his Honor below. The Judge presiding at the trial may permit testimony to be introduced, at any stage of the trial, and this Court will not interfere with the exercise of that discretion, unless in a clear case of abuse. State v. Rush, 34 N.C. 382;State v. Martin, 24 N.C. 101; State v. Stewart, 31 N.C. 342; State v.Perry, 44 N.C. 330. *Page 78 
2. The Court refused to admit the declarations of Miles Haynes. Haynes was himself a competent witness, and of course his declarations, not on oath, were incompetent as evidence. The acts of Haynes tending to show that he was the burglar and not the prisoner, were admitted in evidence, and that was as far as the rules of evidence permitted the prisoner to go. Even the declarations of Miles Haynes, if competent, were not inconsistent with the guilt of the prisoner, since the whole evidence tended to show that the prisoner had a confederate. State v. White, 68 N.C. 158.
3. The last error assigned is, that the Court refused to charge the jury that there was no evidence that the defendant "entered with the intent to steal the goods and chattels," or the "pocket book" of the prosecutrix.
The Court properly refused to thus charge, because there certainly was evidence of such an intent to go to the jury.
The prisoner broke and entered the dwelling about 10 o'clock in the night, and shortly after the inmates had gone to bed; when discovered, he fled; the dress containing the pocket book had been displaced from where it was, upon the chair, and separated from the other garments and thrown upon the floor, and the pocket book, which was in it when the prosecutrix retired to bed, was gone; and there was no evidence that any other person had been in the house.
This was some evidence, the weight and effect of which, in the first place, were for the consideration of the jury, and in the next place, after conviction, for the consideration of the Court, on a motion (85) for a new trial, because the prisoner had been convicted against the weight of testimony. These are matters which are not the subject of review in this Court.
The record before us shows no error in law.
PER CURIAM. Judgment affirmed.
Cited: S. v. Baxter, 82 N.C. 604; S. v. McBryde; 97 N.C. 389, 400;King v. Bynum, 137 N.C. 495; Chandler v. Jones, 173 N.C. 428; S. v.Collins, 189 N.C. 21; S. v. Church, 192 N.C. 660; S. v. Kluttz,206 N.C. 728; S. v. Satterfield, 207 N.C. 122. *Page 79