BROWN BOWEN *v.* THE STATE.

1. SPECIAL VENIRE. — At his trial for murder, the accused moved to quash the special *venire*, on account of discrepancies between the names of three of the persons drawn thereon, and the names as written in the copy served on him of the list of those summoned under the *venire*. *Held*, that the motion was properly overruled, there being nothing to indicate that the accused was misled or anywise prejudiced by the discrepancies, and it appearing that none of the three were on the trial jury, and that the accused did not exhaust his challenges.

2. SAME. — It is not necessary that the *venire* or the copy of the list served on the accused shall designate the offense of which he is charged.

3. CONTINUANCE. — An application for a continuance to obtain the testimony of a witness residing out of the state should show that proper effort had been made to take his deposition, as authorized by the Code.

4. Same — Evidence. — That a third person had voluntarily acknowledged that he committed the crime for which the accused was on trial was not competent evidence for the accused to elicit from persons who heard the acknowledgment made; and, therefore, a continuance to obtain such evidence was properly refused.

5. Diligence. — Process for witnesses must be sued out in a reasonable time, and the application for a continuance to procure their testimony must show to whom and when the process was delivered. Nothing is presumed in aid of an application for a continuance.

6. Privilege of Counsel. — A defendant's counsel is entitled to a reasonable time to present his client's case to the jury, and an arbitrary disregard of this right would be error. But, in regulating the proceedings in his court, the presiding judge is clothed with a large discretion, the exercise of which will not be revised unless it was abused to the prejudice of the accused.

7. New Trial. — When misconduct is imputed to a juror to impeach the verdict, his affidavit is admissible to refute the aspersion and support the verdict.

Appeal from the District Court of Gonzales. Tried below before the Hon. E. Lewis.

In the opinion of this court will be found, not only the matters relevant to the rulings made, but also a clear statement of the material evidence on which the jury convicted the appellant of murder in the first degree. *H. S. Parker*, *Esq.*, of the Gonzales bar, defended the appellant in the court below.

No brief for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

Ector, P. J.   The defendant was indicted on February 10, 1873, in the District Court of Gonzales County, for the murder of Thomas Haldeman. The case was continued at the first term of the court, on the application of the defendant. It was tried at the October term, 1877, of said court, when the jury returned the following verdict: " We, the jury, find the defendant guilty of murder in the

first degree, as charged in the indictment;'' and the case is now before this court on appeal.

The first error assigned is that '' the court erred in refusing to quash and set aside the special *venire,* as drawn and served, for reasons set out in said motion and bill of exceptions.'' It appears from the record before us that, on the first day of the October term, 1877, of said court, in the case of *The State* v. *Brown Bowen,* No. 1166, a special *venire* of sixty men was ordered, returnable Tuesday of the third week of the court, and the cause set for Thursday of the third week. Whereupon the clerk, in open court, on October 1, 1877, and in presence of the judge presiding, proceeded, in compliance with the law, to draw from the list of petit jurors selected for the term sixty persons to serve as special jurors in the cause. The defendant was served with a duly-certified copy of the names of the persons so drawn.

On October 18, 1877, the defendant filed a motion to quash and set aside the special *venire,* for the following reasons, to wit:

'' 1. The names of parties summoned by the sheriff are not given as required by law, and reference is made to exhibit A, hereto attached, and marked ' A,' and made a part of these exceptions.

'' 2. The names of the parties served were not drawn in the order for special *venire facias* in this case, the names of L. J. Durand, Jas. W. Cox, and Al. House not having been drawn in said case, as will appear by reference to exhibit marked ' B,' hereto attached, and made part of this motion and exceptions, and being the only knowledge defendant has of the names drawn and ordered to be summoned in this case, and served on him in said case.

'' 3. The offense is not named in either of said exhibits, 'A' or 'B,' as required by law.''

The above motion was overruled; to which ruling defend-

ant took a bill of exceptions. The said exhibits "A" and "B" each give the style and number of the cause, and are duly certified by the clerk; and the defendant's motion admits that these two exhibits were served upon him by the sheriff. Exhibit "B" is a list of the special *venire* drawn in said cause, containing the names of sixty persons; and exhibit "A" is a list of the names of persons who were returned by the sheriff of Gonzales County as having been summoned to serve as said special *venire* to try the cause. Exhibit "A" contains the names of forty-six persons.

From an examination of these two exhibits "A" and "B" it appears that the names of L. J. Durand, Jas. W. Cox, and Al. House, all of which are contained in exhibit "A," are not in exhibit "B;" and, therefore, it is insisted by defendant that the above names were never drawn on the special *venire*, and are not included in the copy served upon defendant.

An examination of the first bill of exceptions will show that, when the defendant excepted to the copy of the *venire* of sixty men as drawn, and the list of those summoned by the sheriff, the clerk of the court was sworn, and said that L. J. Durand and L. J. Duren were one and the same person, and that said L. J. Duren had served at the term of the court when this trial was had, answering to the name of L. J. Durand; that Al. House and Alfred House were one and the same person; and it appearing to the court that Jas. W. Cox and James W. Cox were the same name, whereupon the said exceptions were overruled.

There is nothing in the record to show that the court erred in refusing to set aside the special *venire* "B" as drawn, and that of "A," served upon defendant. It does not appear that any injustice was done to defendant by this ruling of the court. The names of said Durand, House, or Cox do not appear among the names of the jurors who tried the case. An examination of the record satisfies us that

the trial jury was selected from the list of those summoned of the special *venire*, a copy of which was served upon defendant ; and there is nothing to show that defendant's challenges were exhausted, and that on this account any juror was forced, against the wishes of the defendant, upon the jury. There is nothing to show that he did not have ample time and opportunity to consider any objection he might have had to their capacity or competency as jurors, or that he made any objection to any juror when called, or that he was misled by the copy of the special *venire* of those summoned.

In the case of *Aiken* v. *The State*, 35 Ala. 399, the court says : "It was not shown, or alleged, even, that the twenty-three jurors whose initials simply are given were not known by their initials ; but the objection is that the ' Christian names in full are not given.' For aught that appears in this record, these twenty-three jurors may be as well known by the letters prefixed to their surnames in the *venire* as by their full Christian names. It was not pretended that defendant had been in any way deceived or misled by the list which was furnished him. In the absence of any showing that such was the case, and of any proof that the jurors were not generally known by the names as given in the list, it is obvious that the mere failure to insert in the panel ' their Christian names in full ' is not sufficient ground for quashing the *venire*." See, also, *The State* v. *Anderson*, 3 Rich, 172, and *Bill* v. *The State*, 29 Ala. 38.

The Supreme Court of Ohio, in the case of *Loeffner* v. *The State*, 10 Ohio St. 598, say : " It is not requisite that a *venire* for a special jury, in a case of murder in the first degree, should be either entitled as of the case pending, or state the name of the person of whose murder the indictment charges the accused."

Our Code of Criminal Procedure, in article 3022, Paschal's Digest, provides that " no defendant in a capital case shall be brought to trial until he has had one day's service of a

copy of the names of persons summoned under a special *venire facias*, except where he waives the right. But the service may be made at any time after indictment found, whether before or after arraignment." This court, in the case of *Monroe Harrison* v. *The State, ante,* p. 558, say that "article 3022, Paschal's Digest, has not been repealed or altered by the acts of 1876 with reference to the service upon defendant, and it would not be a compliance with the requirements of this statute to make out and serve defendant with a copy of the names drawn for the special *venire* before the persons were summoned; but defendant is entitled to a copy of the names of those actually summoned — for it is of those summoned that the jury are to be selected who are to try the case."

The record also shows that defendant was served with a copy of the indictment, and what we have already said disposes of the second error assigned.

The third error assigned is that "the court erred in forcing defendant to trial without his having an attorney to consult with one day before trial, as is apparent from the record, by defendant's protest, affidavit, and bill of exceptions." The defendant is not represented in this court by counsel, and we regret that we have to decide a case of such importance without the benefit both of oral argument and briefs for appellant. Our labors have been greatly increased in a critical examination of the entire record, lest some point might be overlooked by the court to the prejudice of the defendant. In justice to his counsel below, we will say that it is seldom the case we find a record where the legal rights of a defendant have been so closely guarded. No question that possibly could arise during the entire trial escaped the attention of his vigilant counsel. We cannot discover anything in the transcript tending to show that defendant was forced into trial without giving his attorney ample time to consult with his client or to prepare for his defense.

The court did not err in overruling defendant's application for a continuance. Four of the witnesses — Mark Mayo, Marion McCurdy, Angeline Sutton, and Mary C. Bowen — whose testimony is said to be material for defendant on his trial, are stated to reside in Escambia County, in the state of Florida, where defendant says he was arrested, in September, 1877. Now, from this it appears that these witnesses resided beyond the jurisdiction of this court; yet defendant made no effort to take their depositions, which he was authorized to do in such cases.

Again, the evidence sought was clearly illegal, and could not have been introduced if these witnesses had been present. They were wanted, as appears from the application for a continuance, to prove what one John Wesley Harden may have said about the killing; that he, Harden, in their presence, voluntarily stated he killed Thomas Haldeman, and acknowledged to defendant that he had done him a great wrong by wrongfully accusing him, defendant, of killing said Haldeman. The best evidence of what Harden knew about the killing would have been the evidence of the witness Harden himself, who is not shown to have departed this life or to have been beyond the jurisdiction of this court. The acts of Harden tending to show that he was the murderer of Haldeman, and not the prisoner, are admissible in evidence. His declarations not under oath were incompetent as evidence.

In the case of *The State* v. *John Haynes*, the Supreme Court of North Carolina held that the declaration of one Miles Haynes, who is a competent witness, is inadmissible, though offered for the purpose of connecting the witness with the crime for which the prisoner is being tried. The court, in speaking of the admissibility of Miles Haynes, say: " Haynes was himself a competent witness, and of course his declarations not on oath were not competent as evidence. The acts of Haynes tending to show that he was

the burglar, and not the prisoner, were admitted in evidence, and that was as far as the rules of evidence permitted the prisoner to go." *The State* v. *Haynes*, 71 N. C. 79.

Defendant stated, in his application, that he wanted the testimony, also, of Joseph Sunday and Pone Freeman, who resided in the county of Gonzales. The diligence which he states was used by him to procure their attendance was "that, on the first day of the court, which was on or about the 1st day of October, 1877, he caused a subpœna to be issued by the clerk of said District Court for Joseph Sunday, and one to be issued for Pone Freeman the next week, which were placed in the hands of the sheriff of Gonzales County; that these witnesses live about twenty-five miles from the court-house, in the county of Gonzales, and that defendant had a subpœna issued for these two witnesses as soon as he was enabled to do so." The affidavit does not show the proper diligence on his part to secure the testimony of the witnesses Sunday and Freeman. It does not state when the subpœnas were placed in the hands of the sheriff. The materiality of the testimony of these witnesses, considering the character of it, must have been known to the defendant as soon as he was indicted; and there is no excuse shown for waiting until the meeting of the court in 1877, before taking any steps to procure the attendance of these witnesses. Process for witnesses must be sued out in a reasonable time, and the application must show to whom and when delivered. Nothing is to be presumed in an application for continuance. See *Cantu* v. *The State*, 1 Texas Ct. App. 402; *Murray* v. *The State*, 1 Texas Ct. App. 417; *Buie* v. *The State*, 1 Texas Ct. App. 452.

The sixth error assigned is that "the court erred in refusing to grant defendant's attorney, after the evidence was closed — it being nine o'clock of the evening of the trial — time to review the evidence, and to procure the attendance of defendant's absent witnesses." The record

shows that, after the evidence had concluded, the argument was opened by counsel for the state, and that the defendant's counsel commenced his argument between nine and ten o'clock at night.  The judge had previously notified counsel that the argument would be concluded and the case submitted to the jury that night.  The defendant's counsel did not, when the announcement was made, interpose any objection to this announcement of the judge.  When the time came for defendant's counsel to address the jury, he arose in the bar and asked the court "if he understood the court that the argument should proceed;" to which the court informed him "that he understood the court correctly."  Defendant's counsel said "he would rather postpone it until morning, and argued the case to the jury as long as he desired, about two hours, and afterwards the state's counsel closed the argument, and at about twelve o'clock, M., the case was submitted to the jury, and at about one o'clock at night the jury brought in their verdict."  All this is shown in a bill of exceptions taken by the defendant.

From this it appears that, when the court announced that "the argument would be concluded and the cause be submitted to the jury that night," the defendant's counsel interposed no objection, and only said, when his time came to address the jury, that he would rather postpone it until morning.  The District Courts, in many counties in the state, are crowded with business, and it is not unusual to have night sessions in order to dispose of the business, and especially for the argument in important cases to be carried on at night.

A large discretion rests with the presiding judge to regulate the proceedings in his court.  While we believe that, in a case involving the life or the liberty of a defendant, his counsel has a right to a reasonable time for the presentation

of the facts to the jury, as well as to comment on those facts, and that an arbitrary disregard of those rights by the District Court will on appeal be ground for reversal, we are not prepared to say that two hours would not be ample time to present this case fairly to the jury, or that the presiding judge abused the discretion reposed in him by law, in regulating the business of his court as he did in this instance. In the case at bar it appears that defendant's counsel had an opportunity to speak as long as he wanted. Unless it appears that some injustice has been done the prisoner in not allowing his counsel sufficient time to properly present his case, this court will not feel called upon, ordinarily, to notice this error complained of.

The ninth error assigned is the action of the court in refusing to grant defendant a new trial. We have already passed upon many of the grounds set out in the motion for new trial.

On a trial for murder, the law applicable to the case must be distinctly set forth in the charge, whether asked or not, and a failure of the court to do this will be a cause of reversal. We have carefully examined the charge of the court, having reference to the evidence, and we believe that it fairly sets forth the law applicable to the case as developed by the facts proved. The judge, in his charge, gives the jury the legal definition of murder of the first and second degrees. Second, he tells them what express and what implied malice are. Third, he instructs them as to the form of their verdict, if they find the defendant guilty of murder in the first degree; that, if they found defendant guilty of murder in the *first degree, as charged in the indictment*, they will say so in their verdict, and the law affixes the punishment by death, which will be declared by the court, *unless* the jury, as they have the discretion to do in this case, shall, in their verdict, substitute confinement in the penitentiary for life for

the death penalty.    He also instructed them as to the form of their verdict if they found the defendant guilty of murder in the second degree.

They were further charged that, if they did not find the defendant guilty either of murder in the first or second degree, they would acquit him; and that the innocence of the defendant is presumed, and it devolves on the state to rebut that presumption of innocence to the satisfaction of the jury, beyond a reasonable doubt, to justify a conviction; otherwise, the defendant would be acquitted.

The following instruction was asked by the defendant, and given, to wit:

" The rule governing a jury in regard to weighing the testimony detailed to them in this case is different from a civil case.    There, a jury can strike a balance and render a verdict without being satisfied beyond a reasonable doubt; but in this case, and all criminal trials, the balance of evidence in favor of guilt must so predominate as to leave in the minds of the jury no reasonable doubt of the guilt of the defendant."

The court did not err in refusing to give the other charge asked, because it had already been substantially given.

The last ground set out in the original motion for a new trial is, " the verdict is contrary to the evidence."    It appears from the evidence that Haldeman was killed at Billings' store, in Gonzales County, on December 17, 1872, between sunset and dark.    Haldeman got helplessly drunk, laid down and went to sleep on the ground near the store, where he was lying with a blanket over him when he was shot and killed.

Mac Billings, a witness for the state, testified that he saw the defendant come out of the store, go up to Thomas Haldeman, where he was sleeping on the ground, and shoot him with a pistol in the back part of the head; that he was well acquainted with the defendant at the time; that he

was about thirty steps from defendant when defendant fired. This witness says he was about fourteen years old when he saw defendant shoot Haldeman. Haldeman was shot in the back part of the head, the ball entering a little to the right of the middle of the head, and coming out at the inside corner of the left eye.

William Billings, another witness for the state, testified that, on the day after Haldeman was killed, Brown Bowen came to his store, and " I asked him what he had killed Haldeman for. Bowen replied that he had a right to kill him. I then asked him what he had killed him in presence of my son Mac for. He answered, ' I did not see Mac until my finger was on the trigger, and it was too late to stop then.' "

We deem it unnecessary to refer to the testimony at any greater length. The evidence is abundantly sufficient to sustain the verdict; and, if true, proves beyond question a cold-blooded, deliberate, premeditated, and cruel murder, committed by defendant.

The defendant attaches the affidavit of one A. B. Breeding to his amended motion for a new trial, to show that he did not have a jury with minds unbiased and unprejudiced to try the case. In this affidavit Breeding says that, on the day of the trial of this cause, while the court was adjourned for dinner, one W. J. D. Pierpont stated to affiant that he, said Pierpont, was on the jury in said case, and that some one in the crowd said he, too, was on the venire in said case, and would like to get off; whereupon, affiant said to said Pierpont they could all get off if they would say to the judge they had conscientious scruples in regard to capital punishment; when Pierpont said he had none, that he had helped to hang several, and, from what he had heard in regard to this man Bowen, that the county would be better off to be rid of all such men. Pierpont was one of the jury that tried the cause. The county attorney submitted the affidavit of the

juror Pierpont, in which he positively denied the statements made in the affidavit of Breeding. Pierpont, in his affidavit, states " that the matters stated in the affidavit of Breeding are absolutely false and untrue, and that he did not at any time make use of any such expressions as are attributed to him by said Breeding, either to the said Breeding or to any other person.

It was proper for the court to consider the affidavit of Pierpont in passing upon the application for a new trial. It is always competent to prove the misconduct of the jury by the voluntary affidavit of a juror, and a verdict may be sustained by such affidavits. The admissibility of such testimony is specially provided for in subdivision 8 of article 3137 of Paschal's Digest. And, certainly, the fact that he has been on the trial jury will not render him incompetent to deny, under oath, the sworn statements of another, who seeks to put him in a false position, thus perverting the truth and seeking to prevent the due administration of the law.

It also appears in a bill of exceptions that the witness Billings, when on the stand, made some statement in regard to a transaction that he failed to connect the defendant with, which statement, on exceptions taken by defendant, was excluded from the jury. We cannot see how it is possible for the defendant to have been injured by what was said, especially as the jury were instructed that the statement was not in evidence.

Perceiving no error in the action at the trial, and it appearing that defendant on the trial had the full benefit of all his legal rights and defenses accorded to him, it remains for us simply to discharge our duty and affirm the judgment. The judgment of the District Court is affirmed.

*Affirmed.*