## REAVIS v. STATE.

PERJURY — EVIDENCE — DECLARATIONS OF THIRD PERSON — RES
GESTÆ.

1. On the trial of a defendant charged with perjury in testify-
ing falsely concerning the circumstances connected with an
assault, his said testimony tending to exculpate the one
accused of the assault, the declarations of the latter indi-
cating that he was the guilty party, made after the assault
was over and while he was returning home, and also while
fleeing from justice the next day, and made out of the pres-
ence and hearing of the defendant, do not constitute part of
the *res gestæ*, and are not admissible against the defendant.

[Decided March 3, 1896.　Information filed in District Court April
10, 1895.]

ERROR to the District Court for Laramie County, HON.
RICHARD H. SCOTT, Judge.

Melvin Reavis was prosecuted upon information for
the crime of perjury.　He was tried and convicted.　He
prosecuted error.　The material facts are stated in the
opinion.

*E. W. Mann and Charles F. Tew* for plaintiff in
error.

Hearsay does not derive its value solely from the
credit to be given to the witness himself, but rests also
on the veracity and competency of some other person.
(9 Am. & Eng. Ency. L., 325; Shaw v. People, 5 N. Y.,
Sup. Ct., 444; Stockton v. Williams, 1 Doug., 570.)
It is inadmissible generally to establish any fact which is
capable of proof by witnesses who speak with knowledge
(9 Am. & Eng. Ency. L., 326 and citations).

Admissions and confessions are admissible only against
the parties making them.　(Soudosky v. McGee, 7 J. J.
Marsh, 266; Thompson v. Richards, 14 Mich., 179;
Burnham v. Sweat, 16 N. H., 418; State v. Ah. Tom,
8 Nev., 213; Dan v. Brown, 4 Cow., 483; Lenhart v.

Allen, 32 Pa. St., 312; Russ. on Crime, 9th Am. Ed., 370–421; Roscoe's Crim. Ev., 10th Ed., 53; Fife v. Com., 29 Pa. St., 429; State v. Fuller, 39 Vt., 74; State v. Dodson, 16 S. C., 453; State v. Workman, 15 id., 541; Blackman v. State, 36 Ala., 295; Gore v. State, 58 id., 391; State v. Weasel, 30 La. Ann. Pt. 2, 919; Ake v. State, 30 Tex., 466; Spencer v. State, 31 id., 64; Priest v. State, 10 Neb., 393.)   Confession to be admissible must relate to the offense charged in the indictment. (Com. v. Call, 21 Pick, 515; Sutton v. Johnson, 62 Ill., 209; Kinchlow v. State, 5 Humph., 9.)   Confession of a third party is hearsay.   (West v. State, 76 Ala., 98; Snow v. State, 38 id., 372; Smith v. State, 9 id., 990.)

To prove the falsity of defendant's testimony, the confession of a third person is not admissible.   (Morrison v. Ohio, 5 O., 438; Brown v. State, 57 Miss., 424; R. v. Turner, Moody C. C., 347: 3 Am. & Eng. Ency. L., 483.)

Chandler's confessions were incompetent: 1. Because they were hearsay.   2. Because he was not shown to have been a confederate of Reavis.   3. Because they were confessions of a third party.   4. Because not made in the presence of Reavis.

*Benjamin F. Fowler*, Attorney General, for the State.

All evidence admissible in the trial of Chandler for the assault on Ingalls was admissible on trial of defendant for perjury.   There is distinction, although a close one, between the declarations admitted on this trial, and admissions made by a principal in the absence of an accessory.   It was necessary to establish the guilt of Chandler in order to show the falsity of defendant's testimony; and any evidence properly admitted at the trial of Chandler would be proper in proving the guilt of Reavis.   (Reg. v. Harrison, 9 Cox C. C., 503; Anderson v. State, 24 Tex. App., 721; Heflin v. State, 14 S. E., 112 (Ga.); Maines v. State, 5 S. W., 123 Tex.; Rex v. Black, 19 Eng. C. L., 563; State v. Peterson, Kan., 38 Kan.,

204. The case of Martin v. State, Tex., 33 Tex. App., 317, is directly in point and sustains the admissibility of the testimony.

Groesbeck, Chief Justice.

Melvin Reavis, the plaintiff in error, was convicted of the crime of perjury in the district court for Laramie County.

The assignment of perjury is upon certain alleged false testimony of plaintiff in error upon the preliminary examination before a justice of the peace of one Isaac Chandler, charged with an assault with intent to murder upon the person of one Elbridge H. Ingalls. The testimony of Reavis alleged to be false was to the effect that Ingalls, who was a policeman at the time of the assault made upon him by Chandler, jerked Chandler, struck him on the head, and knocked him down, and further that a tall man, one John Gambrel, then took hold of Policeman Ingalls, and jumping in behind the latter, was trying to hit him over the shoulders and neck. This testimony related to the facts and circumstances of the assault upon Ingalls, and was to the effect that Chandler was struck and knocked down by Ingalls, just before the time when Ingalls was assaulted and severely cut and wounded by a razor, and was in such a condition that he could not have inflicted the wounds upon Ingalls; and that Gambrel committed the assault upon Ingalls instead of Chandler. The mêlée took place in front of a house of prostitution in the city of Cheyenne. Ingalls, the policeman, had been called to prevent a disturbance at the place, and had succeeded in persuading the party of men to leave the place, and was endeavoring to get them to return to Fort Russell, the disorderly men of the party being soldiers from that military post, who were more or less intoxicated and quarrelsome. Gambrel and Grimes, both soldiers from the post, were scuffling in front of the house, and Grimes had been thrown down by Gambrel. The policeman, it is contended for the prosecution, struck Gambrel with his

"billy," or club, and Chandler then rushed in, seized the policeman, and cut him severely about the face and neck with a razor. Reavis, the plaintiff in error, who was not of the party from the post, but who witnessed the affair, and two other bystanders, testified that Chandler was knocked down by the policeman and Gambrel was the assaulting party. All of the evidence on the part of the prosecution was introduced to show that Reavis swore falsely as to the facts and circumstances of the assault. In addition, testimony was introduced to show that Chandler, after the affair, and while on his way to Fort Russell, said to his companions that he had cut the throats of two men that night, and that he was "the gamest man in the country," and made other declarations tending to show that he was the guilty party, and further, that some time after the assault, after he had deserted from the army, he asked and received accommodations for the night from a party, some fourteen miles from the city where the assault was committed; and after Chandler had gone to bed, he began to exclaim, "They are after me; they are after me." The witness went into the room where Chandler had retired, when the latter informed him that there were men in the room. The witness lighted a candle and explored the room, and informed Chandler that no one was there.

But little attention was paid in brief and argument to the numerous assignments of errors made by counsel for plaintiff in error, except the action of the trial court in admitting these declarations of Chandler after the assault. It is contended that these statements of Chandler were not admissible in evidence against Reavis, as the latter was not present at the times they were made, and because they were in their nature hearsay, and admissible only against the party making them. On the other hand, it is urged that these statements of Chandler were competent evidence against Reavis to show that the latter had sworn falsely, and because they constitute a part of the *res gestæ*.

The trial court gave the following instructions to the

jury in regard to this evidence, which were objected to by the plaintiff in error:

"9.   If the jury believes from the evidence that the confessions and admissions testified to by the witnesses, Crockett Hounchell, John Gambrel, James L. Ewing, Walter D. Walker, and William Stansberry, as having been made in their hearing, respectively, by Isaac Chandler, were so made, and that they were the voluntary act of said Isaac Chandler, and if the jury believes that said confessions and admissions have been corroborated by satisfactory proof, and that said Ingalls was cut, stabbed, and wounded by the said Isaac Chandler, and that said Isaac Chandler was so situated that he had opportunity to do said cutting, stabbing, and wounding, then such confessions and admissions are entitled to great weight in the minds of the jury, in determining who did such cutting, stabbing, and wounding, and who was actually struck and knocked down in said mêlée by said Ingalls.

"10.   Evidence has been introduced as to the alleged flight of said Isaac ,Chandler from this jurisdiction on the day after the assault and battery is alleged to have been committed by him on the prosecuting witness, Ingalls. If you find from the evidence that said Chandler did flee, this is a circumstance ,to be considered by you in connection with all the other evidence, to aid you in determining the question as to who did actually cut, stab, and wound the said Ingalls, and who was actually struck and knocked down by said Ingalls in said mêlée."

It is conceded that all of the testimony relating to the assault itself is competent as showing the truth or falsity of the statements of Reavis as a witness, upon the preliminary examination of Chandler.   The object of introducing such testimony on the part of the prosecution was to show that the facts and circumstances of the assault exclude the idea of honest mistake on his part, the part of Reavis; and it was conceded that he could also introduce evidence showing that his theory of the assault was the correct one, and that he testified truthfully regarding

the affair. But after the assault had been committed, were the declarations of Chandler, admitting his guilt, competent evidence to show the falsity of Reavis's testimony? Reavis was not present at this time, and the mêlée had ended. Chandler was bound by these statements in the criminal action against him, because his declarations were self-deserving and in the nature of a confession or admission. The general rule of evidence is that confessions and admissions are only evidence against the party making them. Roscoe Cr. Ev., 49; Wharton Cr. Ev., Sec. 625; 1 Greenleaf Ev., 213, 233; 3 Am. & Eng. Ency. Law, 482; Rice on Ev., Sec. 237. Self-serving declarations of a defendant are never received in evidence, unless they form a part of the *res gestœ*, and are the spontaneous expressions of the party making them, under the spur of the moment, in explanation of his motives. When, from the lapse of time, it may appear that the party is manufacturing testimony for himself, such evidence is inadmissible, particularly when it is a narration of a past event.

It is clear if Chandler had made any statements at the time when he acknowledged his connection with the affair, exculpating himself that such declarations would not be admissible, because they were not part of the *res gestœ*, were self-serving, and were merely narrations of past events. The evidence being against his interest and inculpatory in character was admissible against him in a criminal action for assault upon the officer, but we do not see how these statements could be used against the defendant in the case at bar, as they were merely declarations of a third person, made not in the hearing and presence of Reavis, and not during the mêlée. The falsity of the alleged perjured testimony must of necessity be shown, to demonstrate that the defendant has sworn falsely in fact, whether knowingly or not, and where there is no other evidence showing that the defendant wilfully and corruptly swore falsely, except his statements false in fact, as in other cases of intent, the jury

may infer the motive from the circumstances. Roscoe Cr. Ev., p. 764. But in order to show the testimony to be false in fact, only competent evidence against the defendant may be produced. In this case all the facts and circumstances surrounding the assault were established by the evidence of eye-witnesses, and undoubtedly for the purpose of excluding the supposition that the plaintiff in error was honestly mistaken in his testimony. Additional evidence was also introduced to show that immediately after the mêlée, the plaintiff in error stated to a newspaper reporter that a man by the name of Ike, "a one-sixteenth negro," evidently meaning Chandler, had committed the assault. This was denied by plaintiff in error, and no objection was interposed as to the competency of the evidence of the reporter in giving Reavis's version of the affair as detailed by the latter. All .this testimony bore directly upon the question at issue. But the admissions and declarations of Chandler did not, as they were merely the statements of a third person after the affair had closed, not made in the presence or hearing of the plaintiff in error. Counsel state that there are but two cases directly in point, and these will be noticed. In the case of Martin v. State, 33 Tex. App., 317, it appears that Martin was indicted for perjury in falsely swearing that one Sam Smith and one Fitzgerald placed a satchel in a straw stack at a certain place named in the indictment, and covered said satchel with straw. The Texas Court of Criminal Appeals held that the motion to quash the indictment should have been sustained as the materiality of the alleged false statement was not alleged nor shown in the indictment. The court was not content with the reversal of the case on this ground, but decided another point. The trial court permitted a witness, Sam Smith, to testify to a conversation between Smith and others and this was objected to because the defendant below was not present at the conversation and because it was hearsay. The witness, Sam Smith, stated the circumstances of the loss of the satchel, his search for it, and how he

traced it to Browning and Brown and recovered most of the money from them, but was unable to find the satchel in which the money was carried, and which had been dropped out of his wagon. Browning and Brown stated to him that they left the satchel in the road after taking out the money. This statement was objected to as being made in the absence of the defendant. The court say: "The rule invoked has no application here. Appellant is not charged with theft of property, but with perjury concerning it. To prove the materiality and falsity of his statement, all testimony tending to prove the theft is admissible, and certainly there could be no reason for excluding the confessions of the parties charged with the theft. Bish. Cr. Proc., 935; Lawrence's case, 2 Tex. Crim. App., 479; Anderson's case, 24 Tex. Crim. App., 721; Wharton Crim. Ev., Sec. 53."

The citations by the Texas court do not establish any such doctrine as it announces, even the Texas cases themselves, as will readily be seen by an examination of the cases. The materiality and falsity of the statement of the defendant can only be shown by competent testimony, in the former case by evidence sufficient to show its materiality in the cause where the perjury was committed, and in the latter case by direct evidence showing the falsity of the statements and not by declarations of third parties. What Browning or Brown or both of them may have said in the absence of the defendant Martin, incriminating themselves, was not evidence against Martin the defendant, to show the falsity or materiality of his statements. The cause was heard without briefs, and it would seem as to the matters relative to the case at bar, with all due respect to that learned court, that the question was hastily considered and that the conclusions of the court are not borne out, but in some respects negatived by the authorities cited

In the case of Brown v. State, 57 Miss., 424, 435, the question submitted is directly in point. The court say: "It is next insisted that it was error to permit the wit-

nesses Taylor, Martin, Banks, and Isaacs to testify as to declarations made by Williams which tended to criminate him as the author of the burning. Some of these declarations consisted of direct threats to burn Smith's house, and some of threats to do Smith an injury — all made before the burning and in the absence of Brown. One of these witnesses also testified to what Williams said when the witness and Williams were returning from the scene of the fire immediately after it took place. We regard all these exceptions as well taken. It is true that Williams's guilt became a material fact on the trial, because, as before shown, it tended to disprove the alibi sworn to by the prisoner; but this fact was to be established in a proceeding in which Williams was not a party, in a controversy between the State and the prisoner Brown. So far as the question of Williams's guilt affected him, it was competent to establish it by his own declarations or admissions; but when it is to be established as a criminating circumstance against Brown, it must be established in the same way that all other facts are to be established against him."

Taking our choice between these diverse views, as counsel state that we must, in view of the fact that their diligent search has unearthed no others directly in point, we should not have much hesitation in adopting the views of the Mississippi court in the case of Brown v. State, and hold in the case at bar, that Chandler's guilt, if it is to be considered as an incriminating circumstance against Reavis, must be established in the same way that all other facts are to be established against the plaintiff in error, by the testimony of witnesses testifying from their own knowledge, and not by the declarations of Chandler made to others that he himself was the guilty party, in the absence of the defendant, and after the affair had terminated. Other cases tend strongly to confirm this view.

Speaking of a former case, Hensley v. State, 9 Hum., 243, in that court the Supreme Court of Tennessee say : "We need only say of this case what was said by this

court in Sible v. The State, 3 Heis., 139 : ' It goes quite as far as we think it consistent with the well-established rules of evidence to go, and we are not inclined to extend the principle of allowing declarations of third persons to be given in evidence, either to criminate or exonerate a defendant in criminal prosecutions.' "

Peck v. State, 86 Tenn., 259.   See Nelson v. State, 2 Swan (Tenn.), 237, 260.   In People v. Simonds, 19 Cal., 278, the declarations of the prisoner's wife that her husband had given her certain money were held to be improperly admitted on the trial.   On this point, the court remark : " But we can not perceive that it was proper to admit the declaration of the wife that her husband had given her the money.   If a third person had made this declaration, no doubt can exist that it would have been mere hearsay and inadmissible; and we can not see the difference in principle between the wife's declarations and that of any one else.   It is true that it has been sometimes said that declarations of a party at the time of doing an act, which is legal evidence, are admissible as part of the *res gestæ*, but this rule does not apply to admit as against third persons, declarations of a past fact, having the effect of criminating the latter.   If so, any felon caught with stolen property might criminate an innocent man by declaring that he obtained the property from such person, or that such third person was associated with the declarant in the criminal fact."

In State v. Jaeger, 66 Mo., 173, 180, the court say : " Mrs. Wall was allowed against the objection of the defendant, to testify in regard to his wife's having called on her the morning following the alleged assault, and in the absence of the defendant, making proposals to have ' the matter hushed up.'   Upon what principle or rule of evidence such statements were admitted, neither the horn books of the profession nor the reports of the adjudged cases, furnish either illustration or example."

In Maines v. State, 23 Tex. Crim. App., 568, 5 S. W., 123, in a perjury case, it was held error for the trial

court to permit certain witnesses to testify to conversations between themselves and another, concerning the guilt of the defendant in a larceny case, wherein the perjury was alleged to have been committed, in which conversation neither of the defendants in the larceny and perjury cases was present, and the court said : "Such testimony was clearly hearsay, and the conversation and agreement were *res inter alios acta*, and in no manner binding either upon Wyers, the defendant in the larceny case, or this defendant."

In a criminal prosecution for larceny where the prosecution was forced to rely wholly upon circumstantial evidence, it was held not to be error to prove the accompanying acts and declarations of a third person for the purpose of showing that the larceny was actually committed, and that such third person was one of the guilty parties, but this was upon the ground that the acts and declarations admitted in evidence did not tend in the least to implicate the defendant in the commission of the offense, and that the transactions and declarations of the third party were part of the *res gestœ*, and did not show nor tend to show defendant's connection with the offense. State v. Peterson, 38 Kansas, 204.   Extrajudicial statements of third persons can not be proved by hearsay unless such statements were part of the *res gestœ*.   Carlton v. People, 150 Ill., 181, 189.   Admissions can not be used in evidence except against the person making them in an issue between him and another person wherein the truth of the admission is involved or against his privies claiming through him; and confessions are incompetent evidence except against a person charged with crime, or in a proper state of case, against his confederates.   Davis v. Com., 75 Ky., 19.   It is not competent for the State to prove the declarations of third persons in reference to matters involved in the trial of the cause, unless the defendants were present at the time the declarations were made.   Butler and Long v. State, 4 Coldwell (Tenn.), 173.   Where the declarations of a party

offered in evidence are merely narrative of a past occurrence, they can not be received as proof of the existence of such occurrence. They must be concomitant with the principal act, and so connected with it as to be regarded as the mere result of the coexisting motives, in order to form a criterion for directing the judgment, which is to be formed upon the whole conduct. A declaration made by confederates of a party in his absence, and after the fact, is not competent evidence against him. Riggs v. State, 6 Coldwell (Tenn.), 517. The confessions of an accomplice are generally not admissible against others implicated. Ake v. State, 30 Tex., 466; Spencer v. State, 31 Tex., 64; Com. v. Thompson, 99 Mass., 444; State v. Ah Tom, 8 Nev., 213. In a prosecution for concealing a horse thief, it is not competent for the prosecutor to prove the confessions of the alleged thief, although in the presence of the defendant, to establish the fact that the horse was stolen. Morrison v. State, 5 Ohio, 438. The rule is clear that one accused of crime can not prove declarations out of court of another person to the effect that the latter committed the offense laid, but must prove what acts were committed by such person, and not his admissions. State v. Haynes, 71 N. C., 79; Fletcher v. State, 24 Ore., 295; Greenfield v. People, 85 N. Y., 76, and cases cited.

The rule relating to admissions by third persons is well stated by Mr. Bishop: "A third person's declarations, as that he committed the crime in question, will not in the ordinary case be admitted for or against the defendant. And it is not otherwise, though the declarant is the defendant's husband or wife, or for civil purposes his agent. But on its being shown that one or more persons were acting in concert with the defendant about the thing in question, with a common object, declarations during its progress by any one of the others, whether present or absent, may be given in evidence against the defendant; yet not declarations after the transaction is ended." 1 Bish. New Cr. Proc., 1248.

It is contended on behalf of the State that all facts necessary to the explanation of the evidence are admissible, and that on a trial for perjury alleged to have been committed on the trial of an assault, all the evidence that was admissible on the trial of the indictment for the assault, is admissible, if relevant, on the trial for perjury. 2 Wharton Cr. Law, 8th Ed., 1326, citing Reg. v. Harrison, 9 Cox C. C., 503.

We quite agree with this proposition, but testimony such as the declarations of the guilty party made after the assault and not in the presence of the one accused of perjury is irrelevant and hearsay, as against the accused. Such testimony is not a part of the *res gestæ*, and does not tend to disprove the facts testified to by eye witnesses. What is to be considered as part of the *res gestæ* and what not, is a question much disputed in the books. It would be an endless task to present the authorities and endeavor to reconcile them, and it is not necessary to do so in this case. It is obvious that the declarations of Chandler after the mêlée, implicating himself as the assailant of Policeman Ingalls, would be admissible in a case against him, not as part of the *res gestæ*, but as his confessions or self-disserving declarations. They were merely narratives of past events, and constitute no part of the *res gestæ*, and were not said under the immediate spur of the transaction; they were not concomitant with the assault and so connected with it as to be considered a result or consequence of coexisting motives.

The same objections are pertinent to the evidence relating to Chandler's flight the day after the assault, and his exclamations after he had retired at the ranch of a witness. If these exclamations indicating fear of pursuit were uttered in sleep, they were inadmissible against him. People v. Robinson, 19 Cal., 41. But if he were conscious at the time, they were not part of the *res gestæ*, neither were the circumstances of his flight. Such evidence is received not as part of the *res gestæ* of the criminal act itself, but as indicative of a guilty mind.

People v. Stanley, 19 Cal., 113, 118, citing Roscoe Cr. Ev., 18. At any rate, it is difficult to see how these matters were pertinent or material to the inquiry whether or not Reavis, the plaintiff in error, had sworn falsely about the circumstances of the assault.

It will not do to say that all of this testimony relating to Chandler's admissions and actions after the assault was committed, was merely irrelevant and consequently did the defendant no harm. It went to the jury against the objection of the defendant, accompanied by instructions which required the jury to take it into consideration.

We should not have disturbed the verdict, had this testimony been excluded, as there was other and rather pointed testimony adduced at the trial, including the statements of Reavis to the newspaper reporter, to show that he had given another version of the affair than that detailed under oath. But, inasmuch as this testimony was contradicted by the defendant, and as he was substantially corroborated in his statements alleged to be perjured by other witnesses as to the facts and circumstances of the assault, we can not say that this improper testimony did not have its weight with the jury in considering their verdict, and that it did not influence them in their decision. "If the minds of the jury, at that juncture, were still tremulous with indecision between the innocence and guilt of the prisoner, the reception of such testimony was sufficient to turn the scale against him. And the courts will hesitate long before they will say that the violation of a plain rule of evidence, as in the present instance, did not operate to the prejudice of the accused." State v. Jaeger, 66 Mo., 173, 180.

The district court of Laramie County erred in the admission of the declarations of Chandler after the assault was over, made while he was returning to Fort Russell, and the day after, when he was fleeing from justice, as they were declarations not forming part of the *res gestœ*, and those of a third person, not made in the presence and hearing of Reavis, the plaintiff in error.

The judgment of said court is reversed and the cause remanded for a new trial.

*Reversed.*

CONAWAY and POTTER, JJ., concur.