# YOUNGER v. STATE.

CRIMINAL LAW—LARCENY—EVIDENCE—WITNESSES—INSTRUCTIONS—
APPEAL AND ERROR.

1. The evidence on the trial of a defendant charged with the larceny of certain horses held sufficient to sustain a conviction, where it appeared that the defendant was at the time in the neighborhood where the horses were stolen, and, with a companion, was traveling in that neighborhood under suspicious circumstances, and, shortly after the theft, had the stolen horses in his possession, and on different occasions so pastured them as to indicate a design to conceal them from view, and had driven them out of the State; the defendant claiming that his companion had purchased the horses from one not the owner.

2. Where a witness for defendant had testified to meeting defendant at the home of witness on the day the horses were alleged to have been stolen, which tended to show that defendant could not have stolen the horses, it was competent for the prosecution on rebuttal to show that the witness aforesaid was seen on the preceding day at such a distance from his home that he could not have met the defendant at the time and place stated by him. The fact that the rebuttal testimony introduced for that purpose may not have been sufficient in itself to clearly establish the impossibility of the truth of the statement made by the witness did not render it incompetent, nor entitle defendant to have it stricken from the record as immaterial.

3. A defendant in a criminal prosecution testifying in his own behalf comes under the rule, as to credibility, applicable to witnesses generally who sustain close relations to the party calling them or who have an interest in the result of the trial.

4. In a criminal prosecution it is not improper for the court to instruct the jury that they have the right, in determining the credibility to be accorded the testimony of the defendant, to consider his interest in the result of the trial, in addition to noticing his manner, and the probability of his statements in connection with the other evidence in the cause.

5. It is not error to instruct the jury in a criminal trial where the defendant has testified in his own behalf that, in considering the weight and effect to be given his evidence, in addition to noticing his manner and the probability of his statements taken in connection with the evidence in the cause, "they should consider his relation and situation under which he gave his testimony, the consequences to him relating as a result from this trial, and all of the inducements and temptations which would ordinarily influence a person in his situation; you should carefully determine the amount of credibility to which the witness is entitled. If convincing and carrying with it a belief in its truth, act upon it; if not, you have a right to reject it;" the court in other instructions having stated that the jury had no right to disregard the testimony of the defendant on the ground alone that he is the defendant, and charged with the commission of a crime, that they should fairly and impartially consider his testimony together with all the other evidence in the cause; and that, in determining the credibility of all witnesses, the jury might consider their interest, bias or prejudice, if any has been shown, and their actions and demeanor while testifying.

6. In an instruction to the effect that the interest of a defendant in a criminal case is a proper matter for consideration in determining the credibility of his testimony, it is better practice to inform the jury that they "may" or "have a right" to consider such interest, instead of saying that they "should" do so, but the use of the word "should" in that connection does not render the instruction erroneous.

7. An instruction that "if the jury believe from the evidence beyond a reasonable doubt that the property described in the information was stolen, and that the defendant was found in the possession of the property soon after it was stolen, then such possession is a circumstance which you may consider in arriving at the guilt or innocence of the defendant, unless the evidence and the facts and circumstances proved have explained such possession," is not objectionable for failing to state that the recent possession is to be considered with all the other facts and circumstances proven in the case, where it is apparent from that and other instructions that it must have been so understood by the jury. Nor is said instruction to be construed as withdrawing from the jury the right to consider

the evidence explaining the possession to establish defendant's innocence.

8. Where, on the trial of a defendant charged with grand larceny, a witness for the prosecution testified generally as to value of the property stolen without objection, and there was no contest as to value, it is too late after verdict of conviction to object for the first time that the witness was not required to show his knowledge of such values, and that the testimony was not confined to the market value at the time and place of the larceny.

9. A defendant charged with grand larceny not having objected to the testimony offered by the prosecution as to the value of the stolen property, nor cross-examined the witness, a verdict of conviction will not be set aside on error on the ground that the witness was not required to show his knowledge of such value, or that proof of value was not restricted to the market value at the time and place of the larceny.

[Decided August 20, 1903.]                    (73 Pac., 551.)

ERROR to the District Court, Big Horn County, HON. JOSEPH L. STOTTS, Judge.

The plaintiff in error was convicted of the crime of grand larceny and prosecuted proceedings in error. The facts are stated in the opinion.

*E. E. Enterline,* for plaintiff in error.

The evidence in rebuttal by the prosecution to ·impeach the testimony of a witness who had testified to having met defendant on the day of the alleged larceny at a place distant from the place where the larceny was committed was incompetent and immaterial unless it tended to establish that the witness could not ·have been at the place where he stated the meeting had occurred. It did not have such effect, for it did not appear that he could not have driven to the place of the alleged meeting after being seen by the witnesses for the prosecution.

The weight of authority is opposed to the instruction given as to the right of the jury to consider the interest of

the defendant in determining the weight and credibility of his testimony. (State v. Webb (Ida.), 55 Pac., 892; Buckley v. State, 62 Miss., 705; 2 Thomp. Tr., Sec. 2421; State v. Miller, 162 Mo., 253; State v. Austin, 113 Mo., 538; People v. Van Eman, 111 Cal., 144; People v. Hertz, 105 Cal., 663; People v. Winters, 125 Cal., 325; State v. White, 10 Wash., 611; Housh v. State, 43 Neb., 163; Argabright v. State, 49 Neb., 760.) It was error to instruct that the jury could reject the testimony of defendant where it is not contradicted or impeached. (Clark v. State, 32 Neb., 246; State v. Seymour (Ida.), 61 Pac., 1033; State v. Chingren, 105 Ia., 169; Barnett v. Com., 84 Ky., 449; State v. Patterson, 98 Mo., 283; Lowe v. State, 88 Ala., 8; State v. Musgrave (W. Va.), 28 S. E., 813; Ryler v. State (Miss.), 22 So., 890.)

The fact of possession is only to be considered in connection with other facts and circumstances proven in the case. (Gillespie v. State (Kan.), 63 Pac., 742; Cooper v. State, 29 Tex. App., 8; Ingalls v. State, 48 Wis., 647.)

The proof as to value was insufficient, because the witness did not show his knowledge of values. (Engster v. State, 11 Neb., 539; Brooks v. State, 28 Neb., 389; Edmonds v. State, 42 Neb., 684; Rooney v. State, 51 Neb., 596.) And it was incumbent on the State to prove the value at the time and place of the alleged larceny. There was no proof on this point. (1 McClain's Cr. Law, 585; 2 Bish. Cr. Proc., Sec. 751 (5); Underhill's Cr. Ev., 358; 12 Ency. Law, 793; State v. Dorpke, 68 Mo., 208; Sanford v. Shepard, 14 Kan., 229; Kerr v. McGuire, 28 N. Y., 448; Harris v. R. R. Co., 56 N. Y., 660; May v. State, 111 Ga., 840; State v. Brown, 55 Kan., 611; People v. Cole, 54 Mich., 238; Burrows v. State, 137 Ind., 474; Smith v. State (Tex.), 44 S. W., 520; Rooney v. State, *supra*.) The conviction can be had only on competent evidence. (Dalzell v. State, 7 Wyo., 450.)

It was incumbent on the State to prove that the defendant asserted exclusive possession of the property. (People v.

Warren, 130 Cal., 683; McNeally v. State, 5 Wyo., 59.) A jury has no right to arbitrarily reject the evidence of the defendant and his witnesses. (George v. State, 59 Neb., 163; Clarke v. State, 32 Neb., 246; State v. Seymour (Ida.), 61 Pac., 1033.) The evidence was entirely insufficient to support a conviction.

*J. A. VanOrsdel,* Attorney General, for the State.

When a witness places himself in a certain location or position, or traveling in a certain direction, it is competent for the opposition to show that the statements of the witness are not true. That is all that was attempted by the rebuttal as to the witness who testified to having met the defendant at a place distant from where the larceny was committed. The matter was before the jury to determine from all the evidence on the subject.

In all but a few jurisdictions it is held competent for the court to instruct the jury that they may consider the interest of the witness, whether as a party or otherwise, in determining his credibility. (Norris v. State, 87 Ala., 85; Hamilton v. State, 62 Ark., 543; Bressler v. People, 117 Ill., 439; Siebert v. People, 143 Ill., 571; State v. Metcalf, 17 Mont., 417; Faulkner v. Ter., 6 N. Mex., 464; State v. Bohan, 19 Kan., 35; Haines v. Ter., 3 Wyo., 167; Clark v. State, 32 Neb., 246; State v. Carey, 15 Wash., 549; State v. Welles, 111 Mo., 533; McDonald v. Rifle B. Co., 71 Mich., 61; Davis v. Railroad Co., 60 Ga., 329; Randall v. State, 132 Ind., 539.) Substantially the same instruction as that given in this case on the subject of defendant's interest as affecting his credibility has been approved in a number of well considered cases. (Norris v. State, 87 Ala., 85; Bressler v. People, 117 Ill., 439; Siebert v. People, 143 Ill., 571; State v. Metcalf, 17 Mont., 417; Halderman v. Territory, 60 Pac., 876 (Arz.); State v. Adair, 160 Mo., 391; State v. Miller, 159 Mo., 113; State v. Zorn, 71 Mo., 415; State v. McGuire, 69 Mo., 197; State v. Wisdom, 84 Mo., 190; State v. Bohan, 19 Kan., 28; State v. McGinnis, 76 Mo., 326; Faulkner v. Territory, 6 N. Mex., 464; Territory v. Romine, 2 N. Mex., 114.)

The instruction as to recent possession is a correct state-
ment of the law.   (Gillespie v. State, 63 Pac., 742.)

No objection was interposed at the trial as to the suf-
ficiency of the proof of value.   Any objection, therefore,
such as now made, has been waived.   There is nothing in the
evidence to show that the value testified to was not the mar-
ket value, nor that the witness was not thoroughly ac-
quainted with the value.   The evidence is amply sufficient
to sustain the verdict.

POTTER, JUSTICE:

The plaintiff in error, Ed Younger, was informed against
in the District Court for the County of Big Horn for the
crime of grand larceny; the information charging him
with having stolen four horses of the value of $300, the
property of one Emereth A. Boots.   The crime is charged
to have been committed July 29th, 1901.   He was con-
victed and was sentenced to imprisonment in the peni-
tentiary for the period of three years and six months, the
jury having by their verdict found the value of the prop-
erty stolen to be $200.

It appears from the evidence that the defendant was at
the ranch of the owner of the property alleged to have
been stolen on the 25th day of July; said ranch being
located, as we understand, in the southern part of Big
Horn County.   Mr. Boots testified that on the evening of
that day Younger rode up to his place and informed him
that there was a horse collar down in the road and then
asked him the way to some mining prospects in the moun-
tains.   He was directed to the road by Mr. Boots, who
opened the gate and told him to go through the field, as it
was nearer.   Younger was accompanied by another man,
both on horseback, and they rode away, leading three
head of horses.   That was the last that Mr. Boots saw of
Younger until he met him in Red Lodge, Montana, where
he had been arrested in possession of the horses claimed
to have been stolen.   The horses were work animals and

had been turned out in the neighborhood of the ranch of
the owner, who missed them on or about July 30th. The
evidence for the prosecution showed that Younger and a
companion were seen at different places within a few
days following their appearance at the ranch of Mr. Boots
traveling, as we understand it, in a northerly direction;
and on the 31st day of August he was seen by one of the
witnesses for the prosecution in possession of the horses
in question. It was not denied by the defendant that
he and his companion were in possession of the horses,
but he testified that they were purchased by his companion
a few days after they were at the ranch of Mr. Boots from
another man by the name of Jones, and the defendant de-
nied having any interest in the horses. It appears, how-
ever, that he exercised some control over them. On the
3d day of August he secured from a witness for the prose-
cution permission to put these horses in his pasture. The
witness testified that the defendant came to his house just
after breakfast, and said his partner was sick and they
would have to lay over for a day, and they wanted to put
some horses in a pasture, as they would not stay together
and wanted to go back. The witness stated that defendant
and companion had come from the south, which would
be from the direction of the Boots place. He further
testified that he discovered afterward that instead of put-
ting the horses in the pasture designated by him, which
was without trees or shrubbery of any sort, they had been
placed in a different pasture that contained brush and
trees. The other horses that defendant and his companion
had with them were not put in a pasture, but were allowed
to graze along the side of the road. The defendant and
companion either shortly before or after this were seen by
another witness in whose pasture four of the eight or nine
horses they had with them were placed.

There was some evidence tending in a measure to cor-
roborate the testimony of defendant that his companion
had bought the stolen horses from a man named Jones.

A witness introduced by defendant testified that just before sundown on a day in the latter part of July the defendant and another man were at his place, and they had five head of horses with them, none of them being the horses belonging to Boots; that his place was about seventeen miles from the Boots ranch; that during the same evening he saw what he supposed was a man named Brown driving four saddle horses about a mile away from his place, and that he saw the man Jones coming from the same direction on horseback; and while his testimony is not clear on the subject, we understand it to indicate that he saw defendant's companion and Jones go back on horseback towards the horses being driven as he supposed by Brown. The next morning the defendant and companion, as he testified, left his place and Jones was not with them. The witness did not see Jones after he left going in the direction in which he had seen the four horses; nor did he see the four horses to examine them. The witness does not trace the particular four horses that he saw being driven into the possession of defendant and his companion; but he states that the next morning they had eight to ten head of horses with them when they left his place. On cross-examination the witness testified that while he was up during the evening mentioned the defendant did not go to where he had seen the four horses; but he could not say whether or not he went there after he, the witness, had gone to bed. The effect of the testimony of this witness, giving it the fullest significance, was to show the possibility or probability that the occasion he referred to was the first time that the defendant and his companion had anything to do with the stolen horses; but the four horses he saw were not identified by the witness as those belonging to the complaining witness. Although, if his testimony was to be believed, an opportunity was shown for the defendant's companion, and even the defendant himself, to have come at that time into the possession of four horses that had been driven to the place where they were stopping by an-

other party, yet the testimony fails to establish such facts, or even to identify the four additional horses they had when they left in the morning, as the horses the witness saw a mile away the evening before, or as the horses that belonged to Mr. Boots.

In addition to the testimony of Mr. Boots, that the defendant was at his place on the 25th of July, another witness, Mr. Mead, a special deputy sheriff, testified that he saw him on the evening of the 27th. Defendant was then on horseback on Bridger Creek, from three to five miles southeast of the ranch of Mr. Boots. He saw him with a companion again the following morning, and had some conversation with him. The witness asked the parties what they were doing there, and defendant said they were prospecting and traveling around a little, and that there was quite a party of them, but he was in the advance; that they were just taking their time, and the others would be up. He testified further that when he first saw them they came around a hill from the northwest, and in the morning they went back in the same direction from which they had come and around the same hill; and that it was about in the direction of the Boots ranch. At that time they had five head of horses, which very clearly were not the horses of Mr. Boots, but were probably the same five head they were seen with at all times, in addition to the four head stolen from Boots.

Considerable testimony was drawn out on both sides relating to the travels of these men; the effort of the prosecution being to show that, although they claimed to be prospecting, they were not in fact giving any attention to that kind of business. We think it unnecessary, however, to further rehearse the testimony. We have carefully examined all the testimony in the record, and are satisfied that it is sufficient to sustain the verdict. The defendant is shown to have been in the neighborhood where the stolen horses were taken, and with a companion, for a time, traveling around in that section under rather suspicious

circumstances. Later they had the horses in their posses-
sion; and on two occasions, at least, carefully pastured
them when remaining in camp, and proceeded to drive
them out of the State. The case turned largely perhaps
upon the credit to be given by the jury. to the statements
of the defendant and the witness produced by him in cor-
roboration of those statements. But it is to be observed
that, according to the claims of the defense, the manner in
which the horses came into the possession of the defendant
and his companion is not itself free from suspicion. We
perceive no reason for disturbing the verdict on the ground
that the evidence is insufficient to sustain it.

Several errors of law are alleged to have occurred at
the trial which we will consider in their order. Charles
Eads, a witness for the defendant below, had testified on his
behalf that he saw the defendant on the 29th day of July
at about 3 o'clock in the afternoon at the ranch of the
witness, and that the horses in controversy were not then
in possession of the defendant and his companion, and the
witness further stated that they were going in the direction
of the James ranch. On cross-examination, the witness
Eads testified that he had just returned to his home from
Deep Creek at noon on the day that he saw the defendant
at his place, and that Deep Creek was about forty or forty-
five miles east of his ranch; and he fixed the day from the
fact that he had been making a deal to sell some of his
horses. He stated that he had left Beet Creek on the morn-
ing of the 28th of July and arrived home at about noon of
the 29th.

On rebuttal, the prosecution introduced one J. M. Cover,
who testified that he met Eads coming from Beet Creek
and going toward Deep Creek and away from his ranch
about 11 o'clock on the morning of the 28th day of July,
and that the place where he met Eads was about fifty-five
or sixty miles from the home of the latter. Objection was
made to the examination of the witness Cover, and after-
wards a motion was interposed by counsel for the defendant

to strike out all of the testimony of said witness as being incompetent, irrelevant and immaterial, and not rebuttal. The denial of this motion is assigned as error, as well as the overruling of the objection to the examination of the witness.

It is insisted that it was error to permit the prosecution to thus contradict the witness Eads. We think otherwise. It is possible that the testimony, as suggested by counsel for plaintiff in error, was not contradictory in fact, for the reason that it was not made to appear that Eads could not have returned home from where the witness Cover saw him on the 28th day of July in time to have met the defendant at his place at the time stated by him. But we think it was competent in rebuttal for the State to show that the witness Eads was at such distance from his home on the 28th of July that he could not have met the defendant on the 29th, as testified to by him. The fact, if it be a fact, that the testimony was not sufficient to establish the impossibility of the truth of the statement made by Eads as to his meeting the defendant did not render the testimony incompetent nor entitle the defendant to have it stricken from the record as immaterial.

In the case of Barry v. People, 68 Pac., 274, the Supreme Court of Colorado say that the rule requiring that foundation be first laid for impeaching a witness by showing that he has made contradictory statements at other times does not apply where the attempt to contradict a witness merely consists of showing acts and circumstances inconsistent with his testimony. No authority is cited by counsel to sustain his contention as to this testimony, and, as we understand the argument, the sole contention seems to be that by reason of the failure to more clearly show that it was impossible for Eads to have reached his home in time to have met the defendant the testimony became immaterial and incompetent. We think that error was not committed in permitting the testimony to be introduced, nor in denying the motion to strike it from the record.

The court of its own motion gave to the jury the following instruction, among others: "The defendant has offered himself as a witness on his own behalf in this trial, and in considering the weight and effect to be given his evidence, in addition to noticing his manner and the probability of his statements taken in connection with the evidence with (in) the cause, you should consider his relation and situation under which he gave his testimony, the consequences to him relating as a result from this trial, and all of the inducements and temptations which would ordinarily influence a person in his situation. You should carefully determine the amount of credibility to which the witness is entitled; if convincing and carrying with it a belief in its truth, act upon it; if not, you have a right to reject it."

It is contended that this instruction is erroneous. But the court, at the request of the defendant, gave the following instruction: "The jury have no right to disregard the testimony of the defendant on the ground alone that he is the defendant and has been charged with the commission of a crime. The law presumes the defendant to be innocent until he has been proved guilty, and the law allows a man to testify in his own behalf, and the jury should fairly and impartially consider his testimony, together with all the other evidence in the case."

The defendant having offered himself as a witness came under the rule applicable to witnesses generally who sustain close relations to the party calling them, or who have an interest in the result of the trial. The instruction complained of seems to us to go no further than the one approved in Haines v. Territory, 3 Wyo., 168. We think the only substantial effect of the instruction is to inform the jury that they have the right in determining the credibility to be accorded to the testimony of the defendant to consider his interest in the result of the trial, in addition to noticing his manner and taking into consideration the probability of his statements in connection with the other evidence in the cause.

We do not think that the instruction is subject to the criticism, that it unreasonably and improperly disparages the defendant's testimony. A similar instruction has been approved in many cases. (Norris v. State, 87 Ala., 85; Bressler v. People, 117 Ill., 439; State v. Adair, 160 Mo., 391; State v. Miller, 159 Mo., 113; State v. Wisdom, 84 Mo., 190; Randall v. State, 132 Ind., 539.)

In the case last above cited the trial court had instructed the jury, in view of certain evidence affecting the general moral character of the defendant for the purpose of impeaching his credibility as a witness, as follows: "The defendant has seen fit to become a witness in his own behalf, and it is proper for you in weighing his evidence to take into consideration such impeaching testimony in determining whether or not the defendant under all the circumstances of the case can be believed. In determining the weight which should be attached to the testimony in his own behalf of a defendant in a criminal prosecution, the jury may take into consideration that he is such defendant, and to what extent, if any, this fact should detract from the credibility otherwise due his testimony." The court in that case also gave to the jury another instruction nearly identical in language with that above quoted given in the case at bar to the effect that they had no right to disregard his testimony, etc. And the court said that, taking the instructions together, they found nothing to justify a reversal; but that the instructions as a whole were as favorable to the accused as he could ask.

An instruction similar to the one here objected to was approved by the Supreme Court of Illinois in the case of Bressler v. People, *supra,* and the court said: "Where the party to the suit testifies, and the jury know him to be such, as must have been the fact in the present case, there needs no further showing that he is a party to the suit, and the jury are authorized to consider to what extent that circumstance should affect his credibility. They are neither bound to believe him nor to disbelieve him, but in weighing his

testimony they are to take into consideration the fact that
it is testimony given by the defendant in the case. The in-
struction goes no further than this." In that case the jury
had been also instructed that they had no right to disre-
gard the defendant's testimony from mere caprice or merely
because he is the defendant; that the law made him a com-
petent witness and the jury were bound to consider his evi-
dence, and give it such weight as they believed it entitled
to, and that they were the sole judges of his credibility.
And in considering all of the instructions in connection
with the instruction complained of, the court said: "It
is impossible when these instructions are considered, as they
should be, and as we doubt not were by the jury, in connec-
tion with the People's sixth instruction, that the defendant's
rights could have been prejudiced by it."

In the case at bar the court gave another instruction ap-
plicable to all witnesses upon the subject of their credibility
and the weight to be given to their testimony, by which the
jury were instructed that they were the sole judges of the
credibility of the witnesses, and the weight to be given to
their testimony; and that in determining the same they
might take into consideration their interest in the case,
their bias or prejudice, if any has been shown, and their
actions and demeanor on the witness stand. In view of
all the instructions given in the case at bar, we cannot con-
ceive that the defendant was prejudiced by the instruction
complained of. We think it a better and perhaps a fairer
practice in such instructions to inform the jury that they
"may" or "have a right to" take into consideration the
matters mentioned, rather than to state that they "should"
do so. The use of the word "should" was approved in
Haines v. Territory, *supra,* and we do not think that it
renders the instruction erroneous.

It is further contended that error was committed in giving
the following instruction: "In this case, if the jury believe,
from the evidence, beyond a reasonable doubt, that the prop-
erty described in the information was stolen, and that the de-

fendant was found in the possession of the property soon after it was stolen, then such possession is a circumstance which you may consider in arriving at the guilt or innocence of the defendant, unless the evidence, and the facts and circumstances proved, have explained such possession."

The objection urged against this instruction seems to be that it fails to state that the recent possession is to be taken into consideration with all the other facts and circumstances proven in the case; and the case of State v. Gillespie (Kan.), 63 Pac., 742, is cited in support of counsel's contention. Although the court in that case referred to a former decision that had criticized an instruction in respect to the recent possession of stolen property for a failure to include "other criminating circumstances" (State v. Powell, 61 Kan., 81), the instruction so criticized was much stronger than the one here complained of. There the trial court had charged the jury that the unexplained possession of recently stolen property was *prima facie* evidence of the guilt of the larceny, and when burglary was charged in connection with the larceny, and the larceny could not have been effected without the commission of the burglary, such possession was also *prima facie* evidence of the burglary. And in some states the rule is, and it is stated to be the absolute rule in the older authorities, that the unexplained possession of recently stolen property is presumptive evidence of guilt. In Roberts v. State, 70 Pac., 893 (11 Wyo., 66), this court said that an instruction stating that the possession of recently stolen property, and certain other facts enumerated in the instruction, were "strong" criminating circumstances, was objectionable. The feature of that instruction, in this connection, that was deemed objectionable was the use of the word "strong," as indicating the weight to be given to the part of the testimony mentioned in the instruction. In that case, however, although the instruction was held to have been erroneous, it was found not to have prejudiced the defendant, in view of his explanation; he having admitted possession and that he had branded the animal charged to have been stolen,

but claimed to have purchased it; and the court having instructed the jury that if defendant had purchased the animal that fact would be a good defense, and that if the jury had any reasonable doubt on that subject they should acquit the defendant.

In the case at bar the instruction objected to merely informed the jury that the fact of possession was a "circumstance" which they might consider, unless the same was explained by the evidence and the facts and circumstances proved. It is true, the fact of possession is to be considered together with all the other facts and circumstances in the case, and we are satisfied from this and the other instructions that the jury must have so understood. Indeed, it is not altogether clear that the reference in the instruction to the evidence and facts and circumstances proved did not so present the matter to the jury. We cannot believe that the jury were misled by the instruction into giving more prominence to the fact of defendant's possession than it was entitled to.

It is argued, however, that the language of the instruction took away from the jury the right to consider the evidence explaining the possession to establish the innocence of the defendant. The argument is extremely technical, to say the least. The instruction cannot be construed as suggested, and in that respect it would question the intelligence of the jurors to think that they were or could have been misled in the direction indicated by counsel. The court in effect informed the jury that the fact they might consider was the fact of the unexplained possession of recently stolen property. It necessarily followed that any explanation believed by the jury would be considered by them, and that such explanation, if believed, and inconsistent with guilt, would take the fact of possession out of the case as a circumstance establishing the defendant's guilt.

It is finally insisted that the evidence of the value of the stolen property is insufficient. There was no contest on the question of value. The witness Boots, the owner of the property, was asked to and did describe the property. He

was then asked, "What do you value these horses at?" He stated that he valued them at three hundred dollars, seventy-five dollars apiece. He was further asked to give the value of each animal, and his answer was seventy-five dollars. No objection was interposed to either of the questions, nor to the answers, nor was he cross-examined in reference to value. Neither was any evidence offered on behalf of the defendant on that subject. It is now argued that the witness was not interrogated as to his knowledge of the value of horses, and that the value proved was not confined to the market value at the time and place of the larceny. It is too late to make those objections. Had there been any dispute respecting the value, it is doubtless true that proof thereof ought to have been limited to the value at the time and place of the alleged larceny; and had an objection on the ground of the incompetency of the witness to testify on the matter been timely interposed, he would have been required to show that he was qualified. But no such dispute arose, nor was any such objection made. The larceny was charged to have occurred in July, 1901, and the trial occurred the following October. Where the value of the stolen property is twenty-five dollars or over, the crime is grand larceny, and the only purpose of proving value in such cases ordinarily is to establish the grade of the offense. It is evident that the defense had no hope or intention of showing that the value of the property was such as to constitute the crime less than the one charged. But not having objected to the testimony at the time, nor to the competency of the witness, the case will not be reversed, because the prosecution was not strictly limited to the rule relied on.

We have thus considered all points relied on by counsel, and we are unable to find any error in the record. The defendant seems to have had a fair and impartial trial. The instructions fairly presented the law of the case, and the judgment must be affirmed.          *Affirmed.*

CORN, C. J., and KNIGHT, J., concur.