OCTOBER TERM, 1911.

## PASEO v. STATE.

(No. 657.)

HOMICIDE — EVIDENCE—SUFFICIENCY — OPINIONS — ADMISSIBILITY —
NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

1. In a murder case where it was claimed that. the killing was
   done in self-defense, the evidence on that issue was con-
   flicting. *Held,* that it was for the jury to say what the
   truth of the matter was, and that the evidence was suffi-
   cient to sustain the verdict convicting the defendant of
   murder in the first degree.
2. Although it was error in a murder case to permit witnesses
   to give their opinions as to the direction from which the
   shots were fired, as that was not a matter upon which
   expert testimony is admissible, the error was not harmful
   or prejudicial, since the witnesses were fully interrogated
   on cross-examination as to the reasons for their opinions,
   and the facts upon which the conclusions were drawn were
   before the jury, and also a diagram purporting to show
   the course of the bullet, and the jury by the verdict of
   conviction must have found that the defendant was the
   aggressor and not acting in self-defense.
3. The matter of granting a new trial for newly discovered
   evidence is largely within the discretion of the trial court;
   and its decision will not be disturbed, unless it appears that
   the discretion of the court was abused, or a clear right of
   the appellant was violated.
4. A new trial on the ground of newly discovered evidence
   will not be granted when the evidence claimed to have been
   discovered since the trial is merely cumulative, or upon
   unimportant matters in the case, or is in the nature of
   impeachment, or where the newly discovered evidence, if
   produced, would not, in the opinion of the court, affect
   the verdict.

[Decided Oct. 6, 1911.]                          (117 Pac. 862.)

ERROR to the District Court, Big Horn County; HON.
CARROLL H. PARMELEE, Judge.

The material facts are stated in the opinion.

*William C. Snow,* (Thos. M. Hyde, of counsel) for plaintiff in error.

The verdict of the jury is not sustained by evidence and is contrary to law. (1) Because there is no evidence of premeditation. (2) Because there is not sufficient evidence to sustain a verdict of guilty in any degree. The defendant and the deceased never met until the afternoon when the defendant went into his saloon, so that there could have been nothing personal to influence the defendant prior to his entering the saloon. The theory of a hold-up is untenable because, in the first place, Paseo seems to have been the only one in the party who carried a weapon. In the second place there was no more inopportune time to hold up the saloon during the whole twelve hours preceding than when the violence did occur, for there were then eight men in the saloon, and two of these (Paseo and Roblis) were foreigners, while the others were companions and residents, and Paseo only seems to have been armed. A third reason which precludes such theory is, that at the time in question, there was very little money in the cash register, and that fact would have been known to the defendant, since the cash register had been opened in view of the occupants of the saloon. A fourth reason is the circumstance that there appears to have been no preparation for an escape. When looking for a motive which could have actuated Paseo, aside from a desire to save his own life, none can be found. If his act was not done in self-defense, then it occurred in the heat of passion, provoked by the belief that he was being robbed at cards. The testimony of the state, however, is to the effect that he was not being cheated and that he had made no complaint. If that evidence is true it is difficult to understand the cause of the trouble.

Premeditation presupposes a motive. If there was no motive, there could be no premeditation. Premeditation or deliberation are not presumed from the mere fact of an intentional killing, or the use of a deadly weapon. (21

Ency. L. (2nd Ed.) 163; State v. Frederick, 4 Wash. 204; Whitford v. Comm., (Va.) 18 Am. Dec. 784.) There is no evidence of premeditation or deliberation up to the time of the killing. Upon the evidence it is apparent that Paseo believed that he had been insulted and injured, whether the deceased struck the first blow or not. His resentment had greatly increased under successive provocations. When the defendant discovered for the third time that the deceased was cheating him, he was not in such a condition as would justify a verdict that he had killed the deceased upon premeditation or deliberation. Was there premeditation between the striking and the shooting? They occurred in such immediate sequence that they must have been caused by one passionate emotion. (21 Ency. L. (2nd Ed) 176.) We contend that premeditation subsequent to the striking of the blow cannot be reasonably inferred from the evidence. There is not sufficient evidence to sustain the conviction of either murder or manslaughter. The evidence of the state as to the circumstances is contradictory, and on the most vital points depends upon the testimony of one witness which is unsupported in several particulars.

The court erred in admitting in evidence the testimony of witnesses as to where the shots were fired from. Expert testimony as to the relative positions of the parties at the time of the shooting, as indicated by the direction of the bullet marks, is not competent. (People v. Smith, (Cal.) 29 Pac. 64; People v. Millner, 122 Cal. 171; People v. Farley, 124 Cal. 594.) The 4th instruction which attempts to define premeditated malice is confusing. The 17th instruction was error and prejudiced the defendant, because the jury were thereby charged that if the defendant was at fault, he was estopped from setting up a plea of self-defense. It is not every fault that deprives one of the right of self-defense. (25 Ency. L. 268, 270.) The defendant was entitled to a new trial on the ground of newly discovered evidence.

*D. A. Preston,* Attorney General, for the state.

The only theory of the defense was that the accused killed the deceased in self-defense, and the only evidence introduced to sustain that theory was that of the accused and his companion who escaped with him after the killing. The testimony of the witnesses for the state is all consistent and not in any way controverted by the evidence of the defendant and his friend, because that portion of their testimony which is material upon the theory of self-defense is proven by the state's witnesses to be untrue, as well as by the other facts and circumstances in the case. If there was an attack by the deceased after the assault upon him by the defendant the latter could not avail himself of the claim of self-defense. (Storey v. State, 99 Ind. 413; Keller v. State, 36 Tex. Cr. 498; Adams v. People, 47 Ill. 367; Henry v. People, 198 Ill. 162; Jacobs v. State, 146 Ala. 103; State v. Tooker, 138 Mo. 438; Robinson v. Terr., (Okl.) 88 Pac. 451.) The intent or purpose of an act may be inferred from its natural and necessary consequences, so that when an act is done with a deadly weapon, the intent to purposely kill may be inferred. (21 Cyc. 875; Wharton on Homicide, Sec. 150; Walker v. State, 136 Ind. 663.) There is nothing in the evidence to rebut this inference, but on the contrary the evidence conclusively proves that there was an intent to kill. When the killing is done with a deadly weapon malice is presumed, especially where there are mitigating circumstances. (Harris v. State, 155 Ind. 265; Cook v. Terr., 3 Wyo. 110; 9 Curr. L. 1638.) While there is no presumption of premeditation, the necessary premeditation may be inferred from the facts and circumstances of the killing. (Hicks v. State, 25 Fla. 535; State v. Walker, 98 Mo. 95; People v. Schmidt, 168 N. Y. 568.) Time is not an essence of premeditation. A crime conceived in anger but executed coolly and with deliberation is regarded as premeditated, and where passion intervenes after premeditation it will not sustain a defense that the crime was committed in the heat of anger. From the fact that the weapon was carried and the shots were fired into

the body of the deceased, it is proper to infer that the
killing was intended although there was no appreciable time
between the formation of the design and its execution.
(9 Curr. L. 1639; Wharton's Cr. L. (8th Ed.) 117; People
v. Schmidt, *supra;* Cook v. Terr., *supra;* Fahnstock v.
State, 23 Ind. 231; Koerner v. State, 98 Ind. 7; Herrin v.
State, 33 Tex. 639; Burns v. State, 66 Ind. 428; People v.
Yee Foo, (Cal.) 89 Pac. 450.) In the light of these au-
thorities the 4th instruction contained a complete and proper
definition of murder in the first degree under our statute.
The 17th instruction is a concise statement of the law upon
the subject therein referred to. The whole trouble was the
fault of the accused, and after he had started it, even if it
were true that the deceased advanced towards him, he had
ample time and means for retreat. (21 Cyc. 800-820.) It
is not material whether the defendant had been a victim
of sharp practice in the gambling game or not. That fact
would not warrant even a breach of the peace.

Even if the testimony of the witnesses who gave their
opinions as to the direction from which the shots were fired
was incompetent, it cannot be held to have been prejudicial,
when all the other evidence is taken into consideration.
The physical facts are uncontradicted, and they show be-
yond a doubt that the shots could not have been fired from
the point contended for by the defendant. The result of
the trial could not have been any different had the so-called
newly discovered evidence been produced.

BEARD, CHIEF JUSTICE.

The plaintiff in error, Lorenzo Paseo, was convicted in
the district court of Big Horn county of the crime of mur-
der in the first degree for the killing of one Charles Cole,
and was sentenced to be hanged. From that judgment he
brings the case here on error.

The case has been submitted in this court on briefs with-
out oral argument, and the greater part of the brief of
counsel for plaintiff in error is devoted to a discussion of
the evidence; it being urged that the evidence is insufficient

to support the verdict and judgment. The defense was self-defense. From the evidence it appears that the homicide was committed about 2 or 3 o'clock a. m. October 30, 1909, in a saloon conducted by deceased and one Parsons, in the town of Lovell. That Paseo and one Robels, who are both Mexicans, came to the saloon in the afternoon or evening before, and that they with deceased were playing cards until they ate supper together about 8 o'clock p. m. After supper they engaged in playing craps for a time, when a card game was resumed in which two or three others were engaged part of the time. During this time the parties were drinking more or less, but Paseo does not seem to have been intoxicated. Paseo testified that Cole was cheating in the games and that he several times complained about it. But there does not appear to have been any quarrel between them until an assault was committed by one or the other of them which brought on the conflict in which Cole was shot and killed by Paseo. Paseo testified that the trouble commenced about the refusal of Cole to pay him a small winning in the game and that Cole struck him with his hand and grabbed him by the shoulder when he drew his gun from his hip pocket and struck Cole upon the forehead with it, knocking him to his knees. That Cole got up, went behind the bar, got a revolver and fired a shot at him, and that he then fired three shots at Cole, who fell, and he then went out of the front door. He was corroborated in his statement of the trouble up to the time he commenced to fire at Cole by Robels, who testified that Cole got a revolver and fired at Paseo, when he (Robels) ran out. Paseo and Robels fled together and were captured in the hills three or four days later. Four other persons who were present at the commencement of the trouble testified that when some dispute about the game arose between Paseo and Cole, that Paseo rose up, drew his revolver and struck Cole while he was sitting and then flourished his revolver around in the faces of those present when they all ran out of the saloon but one. Two of them state that after the striking of Cole there was a scuffle and

that Cole said "that's enough" two or three times. They all stated that Cole did not strike Paseo as he claimed. The one who remained in the room stated that Cole did not get a revolver or fire a shot, and that the only shots fired were the three by Paseo. No one testified to hearing more than three shots. Cole was found to have received three gun shot wounds, one passing through the shoulder, one through the flesh of the·leg and the third in the abdomen, which did not pass through the body; and a fourth wound on the forehead, a contused lacerated wound which divided the flesh for about three-quarters of an inch and reached the skull. Two bullet marks were found in the room, one through the front window and the other passing through a cigar case and out at the front of the building. No other bullet marks were found in the room, and a revolver kept in the saloon was found not to have been discharged. The foregoing is a sufficient statement of the more important part of the evidence to show the direct conflict between the testimony of Paseo and Robels, and the other testimony in the case; and it was for the jury to say what the truth of the matter was. The jury found against the defendant, and we think the finding is sufficiently sustained by the evidence.

It is contended that the court erred in permitting certain witnesses to give their opinions as to where they thought the shots must have been fired from. Paseo testified that he was near a table at the end of the bar when he fired the shots, while the witness who remained in the room testified that he was between the front and back bar near the cash register and about midway along the bar. The opinions expressed by the witnesses tended to support the latter; and we think the testimony should have been excluded, it not being a matter upon which expert testimony was admissible, the jury being as competent as the witnesses to judge of that matter. But the witnesses were fully interrogated on cross-examination as to the reasons for their opinions and it appears that their opinions were based chiefly on the course of the bullet through the cigar case, which was

testified to by them, and there was also in evidence a diagram of the room and furniture, purporting to show the course of the bullet. The facts from which the witnesses drew their conclusions being before the jury we do not think the mere expression of such opinions could have been so harmful or prejudicial to the defendant as to warrant a reversal of the judgment for that reason. Moreover, if the jury found from the evidence, as it evidently did find, that Paseo was the aggressor and assaulted Cole in the manner testified to by the four witnesses, then according to his own testimony he could not avail himself of a plea of self-defense, and it became immaterial from where the shots were fired.

In their brief counsel for plaintiff in error complain of two instructions given by the court to the jury. We have carefully searched the record and fail to find any exception taken at the time to the giving of either of them. We have, however, examined all of the instructions given in the case, and they appear to us to fairly and correctly state the law applicable to the evidence in the case.

Another ground stated in the motion for a new trial was newly discovered evidence. The granting of a new trial on that ground is a matter largely within the discretion of the trial court, and its decision will not be disturbed unless it appears that the court has abused its discretion, or has violated a clear right of the appellant. Nor will a new trial be granted on that ground when the evidence claimed to have been discovered since the trial is merely cumulative, or upon unimportant matters in the case, or is in the nature of impeachment, or where the newly discovered evidence, if produced, would not in the opinion of the court affect the verdict. Numerous authorities on the subject are cited in the note to the case of Link v. U. P. Ry. Co., 3 Wyo. 681, and 14 Ency. P. & P. 791. In this case the greater part of the newly discovered evidence is in the nature of impeachment and in one instance the person by whom it is proposed to prove that before the trial a witness for the state made a statement differing materially from his testimony was

called and testified as a witness for the defendant and about his conversation with such witness. Other portions of newly discovered evidence were not important, if admissible. If the evidence set out in the motion for a new trial had been given on the trial, we are quite convinced that it would not have resulted in a different verdict. The trial court must have been of that opinion, and in so concluding we think it did not abuse its discretion. We have considered all of the points presented in the brief of counsel, and have also examined the entire record and fail to find any prejudicial error, or that defendant was in anywise deprived of a fair trial. The judgment of the district court is therefore affirmed.

No further order is necessary as we are advised by the brief of the attorney general that the sentence has been commuted to imprisonment for life.

*Affirmed.*

Scott and Potter, JJ., concur.